**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

BRIANNA BUENTELLO,

*Plaintiff,*

v.

LAUREN BOEBERT, in her official capacity,

*Defendant.*

Case No. 1:21-cv-00147

**CONGRESSWOMAN LAUREN BOEBERT'S MOTION FOR SUMMARY JUDGMENT**

Defendant the Honorable Lauren Boebert, United States Representative for the Third

Congressional District of Colorado, in her official capacity, respectfully moves for summary

judgment. The "unrebutted facts" previously leading this Court to conclude that "Ms. Buentello

cannot demonstrate that Representative Boebert's use of the @laurenboebert account constituted

state action" remain unrebutted. Order at 14-15 (ECF 31). Accordingly, the Court should grant

Representative Boebert's motion for summary judgment.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56, Representative Boebert submits the

following statement of material facts as to which there is no genuine issue.

**I.      House Rules and Laws Regarding Social Media**

1.      Numerous Congressional rules and laws apply to a United States Representative's

use of official social media accounts. U.S. House of Representatives, Comm. on House Admin.,

116th Cong., *Members' Congressional Handbook*, at 31 (2020); Rep. Boebert's Opp'n to Ms.

Buentello's Mot. for Prelim. Inj. at 8-11 (ECF 27).

2.      Any content posted on a Representative's official social media account "must be

in compliance with Federal law and House Rules and Regulations applicable to official

communications and germane to the conduct of the Member's official and representational duties." *Members' Congressional Handbook* at 32.

3.      Representatives are required to keep official social media pages separate from personal and/or campaign pages. *Id.* at 31-32.

4.      Official social media pages cannot be used for campaign or personal purposes; cannot generate, circulate, or otherwise encourage petitions; cannot include private advertisements or imply government endorsement of a product or service; and cannot include grassroots lobbying. *Id.*

5.      An official social media account must clearly reflect the Member's official position (for example, Representative) in the account name. *Id.*

6.      Under House Ethics Rules, official social media accounts and staff time spent operating those accounts are classified as official House resources. *See* U.S. House of Representatives, Comm. on Standards of Official Conduct, 110th Cong., *House Ethics Manual*, 124, 300 (2008 ed.); Rep. Boebert's Opp'n at 9-10.

7.      Official House social media accounts cannot directly link or refer to websites created or operated by a campaign or campaign-related entity. *House Ethics Manual* at 131.

8.      House resources cannot be used to conduct campaign activity. *See* 31 U.S.C. § 1301(a); 2 U.S.C. § 503(d).

9.      Members are prohibited from using non-official resources, such as campaign funds or campaign staff time, to fund or operate official social media accounts. *Members' Congressional Handbook* at 2.

10.     Personal social media accounts are not subject to House Rules and regulations. *Id.* at 1-2.

## II.      Lauren Boebert's Two Distinct Twitter Accounts

11.      Ms. Boebert has two entirely distinct Twitter accounts—@laurenboebert and @RepBoebert—created for different purposes and operated with separate resources.  Order at 2-3; Ex. A, Decl. of Rep. Boebert ¶¶ 4, 11, 13, 14, 18, 19 (ECF 27-1); Ex. B, Decl. of Jeff Small ¶¶ 8-11 (ECF 27-2).

12.      The Congresswoman, her staff, and the House all view these two Twitter accounts as separate and distinct.  Ex. A ¶ 18; Ex. B ¶¶ 8, 10, 11, 14, 15.

13.      On December 8, 2019, the day Ms. Boebert announced her candidacy for U.S. Representative for Colorado's Third Congressional District, she also created a Twitter account with the handle @laurenboebert.  Order at 2; Ex. A ¶ 2.

14.      Ms. Boebert created the @laurenboebert account to communicate her political views to potential voters and other political actors—and it has been used for that purpose ever since.  *See* Order at 3; Ex. A ¶ 4.

15.      Ms. Boebert was elected to Congress on November 4, 2020.  Order at 2; Ex. A ¶ 8.

16.      On December 28, 2020, as then-Representative-Elect Boebert was preparing to take office in January 2021, the Committee on House Administration ("CHA") created a separate, official Twitter account for Ms. Boebert with the handle @RepBoebert.  Order at 2; Ex. A ¶¶ 9-10.

17.      CHA is a standing committee of the House of Representatives that, among other duties, assists incoming Members with various tasks related to setting up their Congressional Offices, including the creation of official social media accounts.  *See* Order at 2; Ex. A ¶¶ 9-10.

18.     Representative Boebert established the official @RepBoebert Twitter account to communicate with her constituents as part of her official and representational duties as a Member of Congress.  *See* Order at 2-3; Ex. A ¶ 11.

19.     Ms. Boebert is the owner and operator of the @laurenboebert account.  Ex. A ¶ 3.

20.     Ms. Boebert does not use Congressional staff or resources to operate the @laurenboebert account.  Order at 2; Ex. A ¶¶ 3, 18; Ex. B ¶¶ 14-15.

21.     The @laurenboebert account includes a link to the campaign's fundraising page that is easily visible to the public.  *See* Ex. A ¶ 6.

22.     On January 3, 2021, Ms. Boebert tweeted from her @laurenboebert account, "If you want to follow my Congressional account, where important district info & official Congressional business will be posted, join me over at @RepBoebert.  This account will remain my personal account!"  *See* Rep. Boebert's Opp'n at 4.

23.     Ms. Boebert has always acted in her private capacity when she has operated the @laurenboebert Twitter account.  Ex. A ¶ 20.

24.     Since taking office, Ms. Boebert has used her @laurenboebert account to discuss political issues and her legislative agenda.  Order at 3.

25.     Ms. Boebert has also used the @laurenboebert account for campaign purposes, including campaign fundraising.  Ex. A ¶¶ 4-6.

26.     The @RepBoebert account is the Congresswoman's official House Twitter account and is operated using official House resources, including the time that Representative Boebert's Congressional staff spends operating the account.  Ex. A ¶¶ 10, 11, 14; Ex. B ¶¶ 7, 9, 11.

27.     The biographical information in the @RepBoebert account includes a link to the Congresswoman's official House website and the label "Congresswoman (CO-3)."  Ex. A ¶¶ 12, 15.

28.     The Congresswoman has never blocked anyone from her @RepBoebert Twitter account, nor has she ever directed her Congressional staff to block anyone from that account.  Ex. A ¶ 17; Ex. B ¶ 13.

**III.     Plaintiff Brianna Buentello Is Blocked from the @laurenboebert Account**

29.     On January 3, 2021, plaintiff Ms. Buentello tweeted, "Good news is, she [Representative Boebert] can't shut down your account or block you from her @RepBoebert account.  She can block you on her personal one though— nevertheless, keep being funny and awesome.  It'll make 2021 go by faster!"  *See* Rep. Boebert's Opp'n at 5.

30.     On January 6, 2021, Ms. Brianna Buentello directed tweets at Representative Boebert.  Order at 2.

31.     In at least one tweet, Ms. Buentello tagged both Representative Boebert's @laurenboebert Twitter account and her official @RepBoebert House account.  Order at 2-3.

32.     Ms. Boebert then blocked Ms. Buentello's Twitter account from the @laurenboebert account.  Order at 3.

33.     While logged in to her blocked account, Ms. Buentello cannot view the @laurenboebert Twitter feed, and she cannot directly participate in discussions or threads spawned from tweets made from that account.  Order at 3.

34.     At no time did Representative Boebert block Ms. Buentello from the @RepBoebert account.  Order at 3; Ex. A ¶ 16; Ex. B ¶ 12.

35.    Accordingly, Ms. Buentello can fully view the @RepBoebert feed and participate in discussions created by that account's tweets.  Order at 3.

## PROCEDURAL HISTORY

Ms. Buentello filed her complaint and motion for preliminary injunction against Lauren Boebert "in her official and individual capacities" on January 17, 2021.  Compl. at 1 (ECF 1); Mot. at 1 (ECF 2).  The complaint only challenges actions taken with regard to Ms. Boebert's personal account, @laurenboebert.  *See generally* Compl.  At Ms. Buentello's request, this Court dismissed all of the personal capacity claims against Ms. Boebert in her complaint.  Pl.'s Notice of Vol. Dismissal (Mar. 2, 2021) (ECF 18); Order of Dismissal (Mar. 8, 2021) (ECF 23).  As a result, the Court is left only with the request to enjoin Representative Boebert, in her official capacity, for allegations arising solely from the @laurenboebert Twitter account.  Order at 3-4.

Representative Boebert filed an opposition to Ms. Buentello's motion that included sworn declarations from Representative Boebert and her chief of staff, which contained the relevant facts regarding the creation and operation of Ms. Boebert's two distinct Twitter accounts.  ECF 27; Exs. A, B.

The Court denied Ms. Buentello's motion for a preliminary injunction, noting that "[t]he material facts here are not in dispute."  Order at 2.  The Court further explained that "Representative Boebert does not dispute the material facts alleged in the complaint, Ms. Buentello's motion, or her declaration, as Ms. Buentello appears to acknowledge on reply."  *Id.* at n.1.  The Court concluded that "[u]nder the unrebutted facts before the Court, Ms. Buentello cannot demonstrate that Representative Boebert's use of the @laurenboebert account constituted state action."  *Id.* at 14-15.  The Court also ruled that "Ms. Buentello's state-law claim would

fail" because of "Supremacy Clause immunity from state liability," "separation-of-powers reasons," or the lack of state action.  *Id.* at 16-17.[1]

## LEGAL STANDARD

A court "shall" grant summary judgment if a movant shows through the record materials, including any declarations, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A party may file for summary judgment "at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).

The movant "carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  Although evidence must be viewed in the light most favorable to the nonmoving party, once the movant has met its initial burden, the burden shifts and the nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Id.* at 247-48 (emphasis in original).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a factual dispute is material only if it "might affect the outcome of the suit under the governing law."  *Id.* at 248.

---

[1]  This section will hereinafter be referenced as the "SOUMF" in this motion.

## ARGUMENT

As this Court has already concluded, based on the "unrebutted facts before the Court, Ms. Buentello cannot demonstrate that Representative Boebert's use of the @laurenboebert account constituted state action."  Order at 14-15.  Nothing has changed since the Court's pronouncements on these undisputed facts.  Ms. Buentello has not attempted to amend her complaint, seek discovery, request reconsideration of the Court's order, or appeal the order.  The unrebutted material facts before the Court at the preliminary injunction stage remain undisputed to this day.  Under those facts, Representative Boebert is entitled to judgment as a matter of law because there is no (i) relevant state action involved here, (ii) standing, or (iii) valid cause of action.

## I.    Ms. Buentello's Claims Fail Because the Challenged Conduct Was Private, Not State, Action

The First Amendment is a restriction on government, not private, conduct.  *Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 114 (1973).  Thus, to succeed on the merits of her First Amendment claims, Ms. Buentello must establish that Ms. Boebert engaged in state action when she blocked Ms. Buentello from the @laurenboebert account.  *See generally* Order at 6-7.  This Ms. Buentello cannot do.

*A.*  To determine whether conduct amounts to state action, courts consider the totality of circumstances.  *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614-15 (1989).  There must be a "sufficiently close nexus" between the government and the private action such that the private action "may be fairly treated" as that of the government.  *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).  The "dispositive question" in this inquiry "is whether the defendant was exercising the power she possessed based on state authority or was acting only as a private individual."  *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

The distinction between state action and private conduct is fundamental to proper application of the First Amendment, which is a restraint on government action, not action of private persons. *Columbia Broad. Sys.*, 412 U.S. at 114. This principle of law does not change even if private individuals "open their property for speech." *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930-31 (2019). Individuals who hold public office routinely engage in personal acts, including campaign speeches, that are not exercises of state power. *See Campbell v. Reisch*, 986 F.3d 822, 825 (8th Cir. 2021) ("Running for public office is not state action; it is private activity.").

To demonstrate state action, Ms. Buentello must show that Ms. Boebert's act in blocking her on Ms. Boebert's purely personal Twitter account was "undertaken on behalf of the state." Order at 9; *West v. Atkins*, 487 U.S. 42, 49 (1988). The relevant question is whether Ms. Boebert "exercised power possessed by virtue of [federal] law" by blocking Ms. Buentello from Ms. Boebert's personal account, such that the blocking was "made possible only because [Ms. Boebert] is clothed with the authority of [federal] law." *West*, 487 U.S. at 49 (cleaned up). This determination turns on a number of factors, including whether the alleged blocking: "results from the [government]'s exercise of coercive power" or with the government's "significant encouragement"; was caused by a private actor operating "as a willful participant in joint activity" with the government; is controlled by a government agency; or is "entwined" with governmental policies, management, or control. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001) (citations omitted).

Ms. Boebert's blocking here on her private Twitter account implicates none of these factors. It was a private act that did not involve any "right or privilege created by the State." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted). It was not an act

"made possible only because [Ms. Boebert] is clothed with the authority of [federal] law." *West*, 487 U.S. at 49 (citation omitted).  As this Court has already found, "[t]he government does not authorize [Ms. Boebert] to run [the @laurenboebert] account, and her use of the account does not amount to action on the government's behalf."  Order at 13.  Indeed, Ms. Boebert created the @laurenboebert account well before assuming her office in the House and she can at her pleasure keep that account once she leaves office, while at that point she will have no control over the official Twitter account of her successor as the Representative from the Third Congressional District of Colorado.  *See Members' Congressional Handbook* at 31-32.  Given that Ms. Buentello has failed to challenge any actions on the @RepBoebert account or show that Representative Boebert used government resources to operate her @laurenboebert account, she "has not pointed to any state action involved in Representative Boebert's blocking of her on Twitter."  Order at 10.

Ms. Buentello cannot plausibly argue that "the State is responsible" for Ms. Boebert's actions on Twitter. *Id.* at 8-9 (quoting *West*, 487 U.S. at 49).  The Court has noted that, unlike Executive Branch officials, "Representative Boebert, or any member of Congress, has almost no power to act on behalf of the United States government"—particularly when blocking Twitter followers on her personal account. *Id.* at 9.  Representative Boebert's tweets from the @laurenboebert account "have not had any binding, legal effect" here. *Id.* at 12-13.

Ms. Buentello has not challenged these facts, opting instead to propose a legal framework unsupported by law as it pertains to these facts. *See* Order at 13.  But "even under Ms. Buentello's proposed doctrinal framework, Representative Boebert's blocking does not satisfy the requirements of state action." *Id.*

10

Finally, Ms. Boebert's conduct in this case does not "implicate any Tenth Circuit caselaw developed to address when a litigant seeks to hold a private person accountable as a state actor." *Id.* at 13-15 (analyzing the potential applicability of the four tests laid out in *Wittner v. Banner Health*, 720 F.3d 770, 775 (10th Cir. 2013)).

**B.**   The Court has already opined on the leading cases addressing state action in the context of social-media blocking. *See* Order at 7-13 (analyzing *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), *as amended* (Jan. 9, 2019); *Knight First Amend. Inst. at Columbia Univ. v. Trump (Knight)*, 928 F.3d 226 (2d Cir. 2019), *cert. granted*, *judgment vacated as moot sub nom. Biden v. Knight First Amend. Inst. at Columbia Univ. (Knight II)*, 141 S. Ct. 1220 (2021); and *Campbell v. Reisch*, 986 F.3d 822). To avoid repetition, Representative Boebert now highlights why the cases cited by Ms. Buentello do not support any argument for state action here.[2]

*First*, these cases do not establish that the Constitution supports "a process of adding up the content of an official's social-media posts to determine whether some critical mass of state action has been reached that would make the entire operation of the account state action." *See* Order at 8. Though such an approach could potentially reveal whether a social media account is being used for official purposes, that is "far afield" from the question of whether blocking a Twitter follower meets the state action requirements in *West*. *See id.*

*Second*, as the Court has already recognized, the decisions in *Davison* and *Knight* have limited applicability because they involved accounts of officials with executive functions, not of legislators, who have a much more limited ability to act on behalf of the state. *Id.* at 10 (citing *Campbell*, 986 F.3d at 827). Here, the record establishes only that Ms. Buentello was blocked

---

[2]   Representative Boebert directs the Court's attention to her complete analyses of how these cases apply from her opposition to the preliminary injunction motion. Rep. Boebert's Opp'n at 14-21.

from Ms. Boebert's personal Twitter account, not that Congress or the Federal Government has taken any action against her.  SOUMF ¶¶ 23, 32, 34.

*Third*, "[t]hose cases are further distinguishable because both defendants used government staff to operate the social-media pages in question."  Order at 10 n.4 (citing *Davison*, 912 F.3d at 673 and *Knight*, 928 F.3d at 235).  Here, Ms. Boebert has never used Congressional staff to operate her @laurenboebert account.  SOUMF ¶ 20.

*Fourth*, the cases Ms. Buentello relies on regarding social-media blocking by state and municipal legislators are distinguishable and "unpersuasive."  Order at 11.  For instance, the state legislator cases were brought under 42 U.S.C. § 1983 and the Fourteenth Amendment, rather than directly under the First Amendment.  *Id.*  The Court reasoned that several of the other cases relied upon by Ms. Buentello were "distinguishable based on their procedural and factual posture."  *Id.* at 12 (discussing *Windom v. Harshbarger*, 396 F. Supp. 3d 675, 685 (N.D. W. Va. 2019) and *Felts v. Reed*, 504 F. Supp. 3d 978, 988 (E.D. Mo. 2020)).

The Court correctly concluded that this case is "more akin to the situation analyzed in *Campbell v. Reisch*."  Order at 12.  There, the state representative defendant used her social media account primarily for campaign purposes.  *Campbell*, 986 F.3d at 825.  The campaign-related substance of the tweets was insufficient to transform her private social media account into a state account.  *See id.*  Here, despite Ms. Buentello's attempt to aggregate a host of political tweets from the @laurenboebert account, this Court determined that "these are the same kinds of issues Ms. Boebert raised on the campaign trail—the same sorts of tweets found insufficient to transform a private account into a state account in *Reisch*."  Order at 12.[3]

_____

[3]  The Court also noted that there "are significant reasons to question" whether the @laurenboebert account is a public forum, a necessary requirement for Ms. Buentello to prevail on her First Amendment claim.  Order at 15 n.7.

Consistent with the law of the case doctrine, which "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," the Court need not consider re-argument of the state action questions it has already decided. *See Arizona v. California*, 460 U.S. 605, 618 (1983). Because the record fails to establish any state action, summary judgment for Representative Boebert must be granted.

## II.  Ms. Buentello Lacks Standing

For similar reasons, Ms. Buentello has no standing to sue Representative Boebert in her official capacity over actions taken on the personal @laurenboebert account. As the party invoking this Court's jurisdiction, Ms. Buentello bears the burden of establishing standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish "the 'irreducible constitutional minimum' of standing," Ms. Buentello must show that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

To survive a summary judgment motion for lack of standing, a plaintiff must point to specific evidence showing, through specific facts, that he or she was directly injured by the government party being sued. *See generally Lujan*, 504 U.S. 555. Because standing serves to prevent courts "from being used to usurp the powers of the political branches," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013), the inquiry is "especially rigorous when reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

Ms. Buentello's choice to pursue claims only against the Congresswoman in her official capacity means that she is challenging an official action of the Office of Colorado's Third Congressional District, rather than Ms. Boebert's personal actions. *See* Order at 4. This choice dooms any claim of standing here because Ms. Buentello seeks relief from the wrong entity. Ms. Boebert's private acts, including on the @laurenboebert account, are the acts of a separate "legal personage" from her official acts. *See Karcher v. May*, 484 U.S. 72, 78 (1987). Courts use the concept of legal personage as a "practical means of identifying the real interests at stake in a lawsuit." *Id.* "[T]he real party in interest in an official-capacity suit is the entity represented and not the individual officeholder." *Id.* (citing cases).

Therefore, Ms. Buentello fails each standing requirement because Ms. Boebert was not acting as a Member of Congress when she blocked Ms. Buentello from the @laurenboebert account; she was instead acting in her personal capacity, a separate legal "personage" from her official capacity. *See Karcher*, 484 U.S. at 78. Ms. Buentello cannot establish any injury because First Amendment rights are not implicated by a private individual's blocking of a Twitter user. *See* Order at 14-15. She cannot demonstrate traceability to the Government in any way because Ms. Boebert was a private actor when she blocked Ms. Buentello from the @laurenboebert account. *See id.* And finally, Ms. Buentello's grievance with Ms. Boebert cannot be redressed by this Court because she seeks relief from the Congresswoman's office for personal acts taken by the officeholder. *See id.* At bottom, Ms. Buentello does not seek any relief that the Office of the Third Congressional District can possibly grant because that office does not control Ms. Boebert's personal Twitter account.

III.    **This Court Lacks Authority to Grant the Requested Relief Against Representative Boebert**

Ms. Buentello's claims also fail for constitutional reasons.  At the outset, Ms. Buentello's allegations raise fundamental questions about whether she has pleaded a valid First Amendment action.  Order at 4.  Although Ms. Buentello suggests there is an implied cause of action under the First Amendment for an equitable remedy, she has failed to cite any "decision of any court enjoining a member of Congress in her official capacity; nor has the Court found any."  *Id.* Congress has provided for statutory causes of action to assert constitutional claims in other contexts—but not in this context.  *Id.* at 5.  And with regard to the complaint's still-remaining paragraphs seeking monetary relief under a *Bivens* theory, the Supreme Court has explicitly declined to extend a *Bivens* remedy to claims under the First Amendment.  *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (declining to create an implied damages remedy for a First Amendment suit against a federal employer).

A.    *Separation of Powers Concerns.*  The doctrine of separation of powers limits a federal court's inquiry in actions involving Congress.  "In deference to the fundamental constitutional principle of separation of powers, the judiciary must take special care to avoid intruding into a constitutionally delineated prerogative of the Legislative Branch."  *Harrington v. Bush*, 553 F.2d 190, 214 (D.C. Cir. 1977); *Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936) ("[T]he universal rule, so far as we know it, is that the legislative discretion in discharge of its constitutional functions, whether rightfully or wrongfully exercised, is not a subject for judicial interference.").

Ms. Buentello ultimately seeks relief that would require this Court to enjoin a Congressional office to dictate how the individual officeholder conducts her personal affairs.

This would improperly infringe upon the separation of powers doctrine, which precludes "the judicial [branch from] prescrib[ing] to the legislative department of the government limitations upon the exercise of its acknowledged powers." *McCray v. United States*, 195 U.S. 27, 57 (1904). The extensive body of internal House of Representatives rules applicable to Representative Boebert's use of social media—which, as the record shows, she is following— further counsels strongly against an exercise of judicial control over a coordinate branch's actions. SOUMF at ¶¶ 1-10; 20, 22, 26; *see also Barker v. Conroy*, 921 F.3d 1118, 1130 (D.C. Cir. 2019) (accepting "the House's interpretation of its own rules ... thus eliminating any risk of running afoul of either the Rulemaking Clause or separation-of-powers principles").

**B. State Law Claims.** Even if Ms. Buentello were right that the blocking on the @laurenboebert account constituted state action, the Supremacy Clause would present a barrier to her state-law claim. Order at 16-17. By suing Rep. Boebert in her official capacity, Ms. Buentello is necessarily asserting that the Congresswoman's actions as a federal official violate state law. But federal officials carrying out their federal responsibilities are not subject to state law unless Congress has expressly provided otherwise by statute. *See, e.g.*, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988) ("[F]ederal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation.") (citing *EPA v. State Water Res. Control Bd.*, 426 U.S. 200, 211 (1976)); *Hancock v. Train*, 426 U.S. 167, 179 (1976) (citing *Mayo v. United States*, 319 U.S. 441, 447-48 (1943)) ("'The federal function must be left free' of regulation [by the states]." (footnote omitted)). Ms. Buentello has pointed to no such federal statute here allowing Colorado state law to regulate the official conduct of Representative Boebert in carrying out her official federal duties as a Member of Congress.

Moreover, the undisputed record demonstrates that Ms. Boebert's blocking of Ms. Buentello from the @laurenboebert account is private conduct beyond the ambit of the Colorado Constitution, which guarantees every person the freedom "to speak, write or publish whatever he will on any subject." Colo. Const., Art. II, § 10. This clause applies not only to state actors, but also when governmental interests encourage private interests financially and otherwise and when those private interests restrict free speech rights. *See Rouse v. City of Aurora*, 901 F. Supp. 1533, 1540-41 (D. Colo. 1995) (discussing *Bock v. Westminster Mall Co.,* 819 P.2d 55, 60 (Colo. 1991)). As the Court has noted, this standard is not as significant a departure from the federal First Amendment doctrine "as Ms. Buentello argues—or needs it to be to prevail." Order at 16; *see also* Rep. Boebert's Opp'n at 22-23.

Here, there is no such governmental involvement in the operation of Ms. Boebert's personal @laurenboebert account, which was not authorized or supported (financially or otherwise) by the government. SOUMF at ¶¶ 11, 20, 23; Order at 16 (noting the state-law claim fails because the state action arguments "have little applicability to social-media blocking cases where a single elected official commits the relevant act on her own initiative," as occurred here).

## IV.   Discovery Is Unnecessary and Would Present Difficult Legal Questions That Would Impermissibly Distract Representative Boebert From Her Official Duties

The record demonstrates that once the Court considers the two unrebutted declarations submitted by Representative Boebert, Ms. Buentello's claims fail as a matter of law for all the reasons discussed above. Representative Boebert filed these declarations on March 30, 2021, and the Court relied on the undisputed facts from those declarations in denying Ms. Buentello's preliminary injunction motion on June 24, 2021. *See* ECF 27, 31. Since that time, Ms. Buentello has taken no action to clarify or substantiate her claims. If Ms. Buentello disagreed with the "unrebutted evidence," Order at 7, or the Court's conclusions, she could have asked the

Court to reconsider its ruling, appealed the denial of the preliminary injunction, amended her complaint, or sought discovery.  Given these circumstances, the Court should decline to now allow Ms. Buentello discovery in a futile attempt to substantiate her allegations.

Moreover, Representative Boebert is a sitting Member of Congress with critical official, legislative, and representational duties.  "[S]ervice in the United States Congress is not a job like any other, it is a constitutional role to be played upon a constitutional stage." *United States v. Rostenkowski*, 59 F.3d 1291, 1312 (D.C. Cir. 1995).  Accordingly, the potential distraction posed by any further inquiry into the (non-material) facts surrounding Ms. Buentello's allegations would impermissibly "divert [Representative Boebert's] time, energy, and attention from [her] legislative tasks to defend the litigation." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1974).  In addition, because Ms. Buentello continues to pursue her action only against Representative Boebert in her official capacity, any attempt to compel the Congresswoman's production of official or legislative information may face significant constitutional obstacles. Any such attempt at discovery of official information creates the high likelihood of tangential disputes over the applicability of certain doctrines and privileges applicable to Members of Congress, such as sovereign immunity and the Speech or Debate Clause.  Such disputes would be particularly wasteful here because the undisputed material facts show that Ms. Buentello is in fact challenging Ms. Boebert's private conduct rather than her official conduct.

Because Ms. Buentello has declined to take the opportunity to substantiate her allegations or challenge the Court's conclusions about the "unrebutted facts," Order at 14, the Court should decline to permit any discovery that could cause further distraction from the Congresswoman's official duties.

## CONCLUSION

For all the reasons laid out above, this Court should grant summary judgment in favor of

Representative Boebert.

Dated: August 25, 2021                              Respectfully submitted,

*/s/ Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
BROOKS M. HANNER
  *Associate General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES[4]
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
douglas.letter@mail.house.gov

*Counsel for Representative Boebert, in her
official capacity*

---

[4] The Office of General Counsel wishes to acknowledge the assistance of law clerk Jennifer Kaplan, a student at The Catholic University of America, Columbus School of Law, in preparing this brief.

## TYPE-VOLUME CERTIFICATION

1.     This document complies with the word limit set forth in DDD Civ. P.S. III(A)(1) because, excluding parts of the document exempted under the practice standards, this document contains 5190 words.

2.     This document complies with the typeface and type-style requirements set forth in DDD Civ. P.S. I(D) because this document has been prepared in Microsoft Word using 12-point Times New Roman, a proportionally spaced, serif font typeface.


*/s/ Douglas N. Letter*
DOUGLAS N. LETTER

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2021, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Colorado, which will send notification of that filing to all counsel of record in this litigation.


*/s/ Douglas N. Letter*
DOUGLAS N. LETTER