IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00147-DDD

BRIANNA BUENTELLO,

    Plaintiff,

v.

LAUREN BOEBERT,

    Defendant.

---

**SUPPLEMENTAL BRIEFING IN SUPPORT OF
RESPONSE TO MOTION FOR SUMMARY JUDGMENT**[1]

---

Plaintiff Brianna Buentello, in accordance with this Court's Order, [Doc. #37], respectfully submits the below-outlined supplemental briefing in support of her Response to Defendant Lauren Boebert's Motion for Summary Judgment, and states:

1. **<u>Defendant is not entitled to summary judgment based on sovereign immunity.</u>**

Plaintiff only seeks declaratory and equitable relief against Defendant Boebert, in her official capacity.[2] Sovereign immunity does not protect federal officials from a suit naming them in their official capacities when declaratory or injunctive relief, rather than damages, is sought. *See* Erwin Chemerinsky, Federal Jurisdiction § 9.2.2 (5th ed. 2007) ("An extremely important and well-established exception to the principle of sovereign immunity is that suits [seeking

---

[1] Should this Court decide this case on the merits, and deny Plaintiff the opportunity to conduct meaningful discovery, Plaintiff incorporates by reference her motion for preliminary injunction and reply in support of motion for preliminary injunction as additional bases for denying Defendant Boebert's motion for summary judgment. *See*[Doc. #2]; [Doc. #29].

[2] Plaintiff previously sought damages against Defendant Boebert in her individual capacity, but dismissed those claims along with the individual capacity claims against Defendant Boebert. [Doc. #18].

1

injunctions] against government officers are not barred."); *Ex Parte Young*, 209 U.S. 123, 151-56 (1908) (holding that sovereign immunity does bar claims for prospective, equitable, or injunctive relief against officials charged with violating federal law); *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225 (10th Cir. 2005).[3] Importantly. the Tenth Circuit has specifically recognized that Congress has expressly waived sovereign immunity of federal officials in actions seeking injunctive relief to enforce the Constitution. *See Simmat,* 413 F.3d at 1225; *see also Raz v. Lee*, 343 F.3d 936 (8th Cir. 2003).

Additionally, 28 U.S.C. § 1361 expressly confers jurisdiction upon the district courts over mandamus actions "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.; see also Simmat*, 413 F.3d at 1234. Similarly, 5 U.S.C. § 702 provides that "[a]n action in a court of the United States seeking relief other than monetary damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States[.]" This provision, although contained within the federal Administrative Procedures Act, has been applied in civil rights actions. *See, e.g., Presbyterian Church v. United States*, 870 F.2d 518, 524-25 (9th Cir.

---

[3] *See also Everett v. Francis*, No. 5:07CV135, 2009 U.S. Dist. LEXIS 84629, 2009 WL 2971359, at *4 (N.D.W.Va. Sept. 16, 2009) (holding that "preclusion of actions against federal officers or agents in their official capacity as violative of sovereign immunity is inapplicable to claims for injunctive relief"); *Morrison v. Pettiford*, No. 4:07-1504-CMC-TER, 2007 U.S. Dist. LEXIS 95974, 2007 WL 4729692, at *1 (D.S.C. Dec. 18, 2007) ("Sovereign immunity does not bar . . . [an] action for injunctive relief."); *Comm. for Immigrant Rights of Sonoma Cnty. v. Cnty. of Sonoma*, 644 F.Supp.2d 1177, 1193 (N.D.Cal. 2009) ("[T]o the extent that plaintiffs seek only injunctive and declaratory relief against ICE and the DHS, the Bivens claims are not subject to dismissal on the basis of sovereign immunity."); *Sabina v. Fed. Bureau of Prisons*, No. 08-3903-TLW-PJG, 2010 U.S. Dist. LEXIS 22700, 2010 WL 972579, at *3-4 (D.S.C. Feb. 12, 2010) (explaining various ways in which federal prison officials are susceptible to suits for injunctive relief); *Foreman v. Unnamed Officers of the Fed. Bureau of Prisons*, Civil Action No. DKC 09-2038, 2010 U.S. Dist. LEXIS 121532, at *8-9 (D. Md. Nov. 17, 2010).

1989) (holding that § 702 waived sovereign immunity in an action seeking injunctive relief for alleged First and Fourth Amendment violations); *Clark v. Library of Congress*, 750 F.2d 89, 102, 242 U.S. App. D.C. 241 (D.C. Cir. 1984) (holding that § 702 "eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency or officer acting in an official capacity"). The text of § 702 is clear in stating that

> The United States has waived its sovereign immunity in suits requesting other than monetary relief. Thus, federal court suits for injunctive and declaratory relief are permitted, either against federal officers or directly against the United States government. This is a major exception to the doctrine of sovereign immunity because it allows the judiciary, assuming all other jurisdictional requirements are met, to halt illegal government conduct.

Chemerinsky, *supra*, § 9.2.2.

Thus, because Plaintiff is seeking only injunctive and declaratory relief against the Defendant Boebert in her official capacity, sovereign immunity does not apply and this Court has jurisdiction over Plaintiff's suit for injunctive and declaratory relief. *See Simmat*, 413 F.3d 1225.

2. **Defendant is not entitled to summary judgment based on Supremacy Clause immunity.**

Supremacy Clause immunity only applies where a federal officer is held "to answer for an act which he was authorized to do by the law of the United States, which it was his duty to [do as a federal officer], and if in doing that act he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under the law of" any state. *In re Neagle*, 135 U.S. 1, 75 (1890). Importantly, the case law does not endorse an "anything goes" approach to fixing the authority of federal officers. *See Colorado v. Symes*, 286 U.S. 510, 518 (1932); *In re McShane*, 235 F. Supp. 262, 273 (N. D. Miss. 1964). In line with this precedent, a federal officer is not entitled to Supremacy Clause immunity unless (1) the federal agent was performing an act which he was authorized to do by the law of the United States and (2) in performing that authorized act, the federal agent did no more than what was necessary and proper for him to do.

3

*Kentucky v. Long*, 837 F.2d 727, 744 (6th Cir. 1988) (citing *In re Neagle*, 135 U.S. at 75); *see also Wyoming v. Livingston*, 443 F.3d 1211, 1222 (10th Cir. 2006). When assessing whether a federal officer's actions were "necessary and proper," the court must apply both a subjective and objective standard. *Long*, 837 F.2d at 745. The court must determine whether the federal officer subjectively believed that the actions were authorized. Then, the court must analyze whether the federal officer's subjective belief was objectively reasonable under the circumstances. *Id.* at 744. Courts routinely analyze Supremacy Clause immunity, including the duties of federal officials, and do so while acknowledging that engaging in this analysis does not implicate separation of powers concerns. *See e.g., Texas v. Kleinert*, 855 F.3d 305, 314-15 (5th Cir. 2017); *Wyoming*, 443 F.3d at 1222 (; *Neagle*, 135 U.S. at 59. "[E]ven if a federal officer satisfies every element of the immunity standard, the Supremacy Clause cannot shield the officer from *federal* consequences, such as… civil liability under federal law." *Texas v. Kleinert*, 855 F.3d 305, 320 (5th Cir. 2017).

Defendant Boebert, in blocking Plaintiff from her Twitter account, did more than what she subjectively believed was "necessary and proper." This subjective element depends on an Defendant Boebert's "'honest[]' belief that h[er] actions are reasonable and necessary to the exercise of h[er] authority." *Livingston*, 443 F.3d at 1221; *Morgan v. California*, 743 F.2d 728, 731 (9th Cir. 1984). Any evidence of "personal interest [or] malice" will negate subjective reasonableness. *Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982); *Kleinert*, 855 F.3d at 317; *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977); *Cf. in re Lewis*, 83 F. 159, 160-61 (D. Wash. 1897). Defendant Boebert had a clear personal interest in blocking Plaintiff; Plaintiff was criticizing Defendant Boebert's actions when she was blocked and that blocking was not done to further any legitimate authority that Defendant Boebert possesses. At the very least, and as

discussed further below, Plaintiff is entitled to obtain discovery about this element prior to her Colorado Constitutional claim being dismissed on the basis of Supremacy Clause immunity.

In analyzing objective reasonableness, courts must "evaluate the circumstances as they appear to federal officers at the time[.]" *Livingston*, 443 F.3d at 1229; *accord New York v. Tanella,* 374 F.3d 141, 151 (2d Cir. 2004); *Idaho v. Horiuchi*, 253 F.3d 359, 366 n.10 (9th Cir. 2001) (observing conduct could be objectively unreasonable though undertaken with good intent). The circumstances surrounding Defendant Boebert's blocking of Plaintiff illustrate that it was not objectively reasonable for Defendant Boebert to subjectively believe (if she even subjectively believes) that her blocking was undertaken pursuant to official duties. In fact, Boebert admits that her actions in blocking Buentello were not necessary to fulfill her duties as a United States Representative as she claims that she did not use the @laurenboebert Twitter account in her official capacity as a United States Representative. [Doc. #34], p. 4, ¶ 23. As admitted, there was no statute or regulation giving Defendant Boebert the official authority to operate her @laurenboebert Twitter account. Additionally, it would have been obvious to Defendant Boebert that blocking Plaintiff violated her free speech rights given the recently decided *Knight* case which was widely covered in the media. Clearly, it is not part of a Representative's duties to violate the rights of their constituents. And, it is a Representative's duty to listen to their constituents' concerns and to have open avenues of communication with their constituents. Preventing a constituent from communicating with a Representative, when that constituent has not engaged in any threatening, harassing, or other unprotected speech, is not a necessary function of being a Representative, and there would be no good-faith basis for Defendant Boebert to believe that blocking her constituent, Plaintiff, would be necessary to fulfill her official duties. A reasonable representative in her position would not believe that

5

blocking Plaintiff pursuant to her official duties. *See Arizona v. Files*, 36 F. Supp. 3d 873, 884 (D. Ariz. 2014).

Finally, and notably, the test for determining state action is markedly different than the test for determining whether the Supremacy Clause defense is available to a particular federal official. *Compare Livingston*, 443 F.3d at 1222 *with Wittner v. Banner Health,* 720 F.3d 770, 775 (10th Cir. 2013, *Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019), and *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 231, 236 (2d Cir. 2019). Therefore, whether Defendant Boebert's act of blocking Plainitff constituted state action is not determinative of whether Defendant Boebert is entitled to Supremacy Clause immunity for her actions.

3. **Plaintiff states a valid cause of action.[4]**

Article III, § 1, provides that the "judicial Power . . . shall be vested in one supreme Court, and in such inferior Courts as the Congress may . . . establish." Further, § 2 mandates that the "judicial Power shall extend to all Cases . . . arising under this Constitution[.]" It has long been held that a suit "arises under" the Constitution if a petitioner's claim "will be sustained if the Constitution . . . [is] given one construction and will be defeated if [it is] given another." *Bell* v. *Hood*, 327 U.S. 678, 685 (1946). Additionally, 28 U.S.C. § 1331(a) states that "The district courts shall have original jurisdiction of all civil actions… [which arise] under the Constitution, laws, or treaties of the United States." "[I]t has generally been recognized that the intent of the drafters [of 28 U.S.C. § 1331(a)) was to provide a broad jurisdictional grant to the federal courts." *Powell v. McCormack*, 395 U.S. 486, 515-16 (1969). And, where the

---

[4] Plaintiff no longer seeks monetary damages under *Bivens* against Defendant Boebert, and only seeks injunctive relief, after the dismissal of her individual capacity claims.

"resolution" of a case depends directly on construction of the Constitution" the Supreme Court "has consistently held" that the suit is "authorized by" 28 U.S.C. § 1331(a). *Powell v. McCormack*, 395 U.S. 486, 515-16 (1969) (citing *Bell*, 327 U.S. at 685; *King County v. Seattle School District No. 1*, 263 U.S. 361, 363-364 (1923); *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 112 (1936); *The Fair* v. *Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). The Supreme Court has explicitly held that suits against members of Congress to enforce the Constitution state a cause of action under 28 U.S.C. § 1331(a). *Powell*, 395 U.S. at 515-16 (holding that member of Congress who sued, under the Constitution, to enjoin Congress from excluding him from Congress had states a claim based on federal law).

Ultimately, "[t]he broad power of federal courts to grant equitable relief for constitutional violations has long been established." *Carlson v. Green*, 446 U.S. 14, 42-43 (1980) (Rehnquist, J., dissenting) (citing *Marbury* v. *Madison*, 1 Cranch 137 (1803)); *Bell*, 327 U.S. at 684 ("[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief."); *Bivens*, 403 U.S. at 400 (observing the existence of "the presumed availability of federal equitable relief, if a proper showing can be made in terms of the ordinary principles governing equitable remedies") (Harlan, J., concurring). As the Supreme Court observed in *Swann* v. *Charlotte-Mecklenburg Board of Education*, "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrong is broad, for breadth and flexibility are inherent in equitable remedies." 402 U.S. 1, 15 (1971). This Court should follow the "established practice" of the federal courts and "sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Bell*, 327 U.S. at 684; *see also Bolling v. Sharpe*, 347 U.S. 497 (1954).

7

4. **Plaintiff's cause of action does not raise separation of powers concerns.**

> Especially is it competent and proper for this court to consider whether its [the legislature's] proceedings are in conformity with the Constitution and laws, because, living under a written constitution, no branch or department of the government is supreme; and it is the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government, and even those of the legislature in the enactment of laws, have been exercised in conformity to the Constitution; and if they have not, to treat their acts as null and void.

*Kilbourn v. Thompson*, 103 U.S. 168 (1880). This proclamation of the Court's role, which was reiterated by the Supreme Court nearly a century later in *Powell*, demonstrates that Plaintiff's cause of action does not implicate separation of powers concerns. 395 U.S. at 505-06. Plaintiff is merely asking this Court to determine whether an act of a federal official, who happens to be a member of Congress, violates her First Amendment rights. The Supreme Court in *Powell* reversed a district court's decision to avoid a similar question on separation of powers grounds and that decision should control the Court's analysis here. *Id.* at 512.

Additionally, the cases cited by Defendant Boebert in her motion, [Doc. #34], are factually dissimilar to the case-at-bar. All of the cases cited by Defendant Boebert were *brought* by members of Congress seeking Court intervention: (1) "on behalf of one member of the Legislative Branch to change 'the rules of its proceedings' adopted by the entire body of the House," *Harrington v. Bush*, 180 U.S. App. D.C. 45, 553 F.2d 190, 214 (1977), and (2) into the legislative process. *Hearst v. Black*, 87 F.2d 68, 71 (D.C. Cir. 1936). These scenarios are far afield from what Plaintiff is seeking the Court to do here: simply order that Defendant Boebert stop violating Plaintiff's First Amendment rights and cease blocking her from engaging with Defendant Boebert's Twitter account.

5. **The discovery Plaintiff seeks will materially alter the analysis of whether Defendant is entitled to Supremacy Clause immunity.**

As Plaintiff previously outlined, Defendant Boebert's motion is an attempt to "railroad" Plaintiff in this case "through a premature motion for summary judgment before [Plaintiff] has had the opportunity to make full discovery." *Dickens v. Whole Foods Market Group, Inc.*, Civ. No. 01-1054, 2003 WL 21486821, at *2 n.5 (D.D.C. Mar. 18, 2003) (citations omitted); *see* [Doc. #35]. With respect to Supremacy Clause immunity, "Supremacy Clause immunity dismissals present a mixed question of law and fact[.]" *Wyoming v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006). The court must view the evidence "in the light most favorable to" Plaintiff. *Morgan*, 743 F.2d at 733. When there is "a conflict of evidence" as to the elements of Supremacy Clause immunity (e.g., whether the defendant's conduct is authorized by federal law), the defendant is not be immune. *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 7-8 (1906). In this case, whether Defendant Boebert would be entitled to Supremacy Clause immunity turns on questions of fact that need to be resolved through the discovery process. As outlined above, Defendant Boebert's intent in blocking Plaintiff is a key factor in determining whether she is entitled to Supremacy Clause immunity. It is necessary to take Defendant Boebert's deposition, and the depositions of those involved in her decision to block Plaintiff, to determine her state of mind at the time. This alone makes summary judgment inappropriate, and this Court should allow Plaintiff to conduct the discovery outlined in her 56(d) motion. *See* [Doc. #35].

6. **Conclusion**

Based on the foregoing, Plaintiff requests that this Court deny Defendant Boebert's Motion for Summary Judgment in its entirety.

Dated this 27th day of June, 2022.

KILLMER, LANE & NEWMAN, LLP

*/s/ Andy McNulty*

David A. Lane
Andy McNulty
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
dlane@kln-law.com
amcnulty@kln-law.com

*ATTORNEY FOR PLAINTIFF*

10


*/s/ Andy McNulty*

David A. Lane
Andy McNulty
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
dlane@kln-law.com
amcnulty@kln-law.com

*ATTORNEY FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

       I certify that on this 27th day of June, 2022, I filed a true and correct copy of the foregoing via CM/ECF which will generate emailed notice to the following:

Douglas N. Letter
Brooks Hanner
Todd B. Tatelman
Office of General Counsel
US House of Representatives
5140 O'Neill House Office Building
Washington, DC 20515
Douglas.letter@mail.house.gov
Brooks.hanner@mail.house.gov
Todd.tatleman@mail.house.gov
*Counsel for Defendant in her official capacity*

                                        *s/ Jamie Akard*
                                        Jamie Akard